IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROSIE MARIE LEWIS                                                                                    PLAINTIFF

VS.                                                                         CIVIL ACTION NO. 3:15-cv-817-FKB

CAROLYN W. COLVIN, COMMISSIONER                                                     DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

MEMORANDUM OPINION AND ORDER

This cause is before the Court regarding the appeal by Rosie Marie Lewis of the Commissioner of Social Security's final decision denying Lewis's application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). In rendering this Memorandum Opinion and Order, the Court has carefully reviewed the Administrative Record [7] regarding Lewis's claims (including the administrative decision, the medical records, and a transcript of the hearing before the Administrative Law Judge ("ALJ")), Plaintiff's Motion for Summary Judgment [9], Memorandum Brief [10], Defendant's Motion to Affirm Commissioner's Decision [13], Memorandum Brief [14], and Plaintiff's Rebuttal [15]. The parties have consented to proceed before the undersigned United States Magistrate Judge, and the District Judge has entered an Order of Reference [12]. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

For the reasons discussed in this Memorandum Opinion and Order, the undersigned finds that the Commissioner's decision should be affirmed. Accordingly, the Motion to Affirm [13] is granted, and Plaintiff's Motion [9] is hereby denied.

I.  PROCEDURAL HISTORY

Lewis filed her application for a period of disability, DIB, and SSI on September 20, 2012, and alleged a disability onset date of April 15, 2011, when she was thirty-nine years of age. [7] at 63, 81, 154-162, 174.[1]  Lewis's earning record demonstrated that she had acquired sufficient quarters of coverage to remain insured through March 31, 2015.  *Id.* at 174.

Lewis was born on April 8, 1972, and she was forty-two years of age on the date she was last insured.  *Id.* at 23.  Thus, she was considered a "younger person" under the regulations.  20 C.F.R. § 404.1563(c).  Lewis completed high school with a certificate of attendance for completing a special education curriculum.  [7] at 36, 373.  In the fifteen years leading up to her disability onset date, Lewis had been employed as a poultry line operator, poultry grader, and box assembler.  *Id.* at 54.  The poultry line operator is classified as light, unskilled work with specific vocational preparation ("SVP") of 2.  *Id.*  The poultry grader is classified as light, semi-skilled work with an SVP of 3.  *Id.*  And the box assembler is classified as light, unskilled work carrying an SVP of 2.  *Id.*  She had worked since 1995 in the chicken processing industry.  *Id.* at 180.

In her request for disability, Lewis alleged that she is disabled and stopped working due to several conditions: osteoporosis in left leg, high blood pressure, and a bad case of arthritis in her left leg.  *Id.* at 179.  In her application, she also stated that she was five feet, one inches tall and weighed one hundred seventy pounds.  *Id.*  The Court observes that Lewis did not assert that borderline intellectual functioning was a disabling condition in her application for benefits.  *Id.*

The Social Security Administration denied Lewis's application initially and upon reconsideration.  *Id.* at 63-70, 72-79, 81-88, 89-96.  Lewis requested a hearing, which was held

---

[1]. Citations reflect the original pagination of the administrative record.

on June 16, 2014, via video, with Lewis, who was represented by counsel, appearing in Meridian, Mississippi, and the ALJ presiding from Hattiesburg, Mississippi. *Id.* at 27. On July 11, 2014, the ALJ issued a decision finding that Lewis was not disabled. *Id.* at 12-21. The Appeals Council denied her request for review on September 14, 2015, *id.* at 1, and this appeal followed.

## II.  MEDICAL HISTORY

The Court has determined that a detailed recitation of the medical records is not necessary because the parties summarized Lewis's records in their briefs, and the ALJ provided thorough summaries in her decision. Nevertheless, a review of the observations and evaluations of certain examiners will aid in the consideration of this case.

On November 14, 2012, Dr. Anthony Fouts conducted a consultative medical examination of Lewis. *Id.* at 357-362. At the examination, Dr. Fouts documented that Lewis was sixty-four inches tall and weighed one hundred ninety-five pounds, with a BMI of 33.5. The doctor commented that she had high blood pressure. *Id.* at 360.[2] Dr. Fouts found that Lewis had a full range of motion in her shoulders, elbows, wrists, and hands. *Id.* at 360. Her fine and gross manipulation were intact, and her grip strength was 5/5. *Id.* Lewis had a full range of motion in her right hip, knee, and ankle without joint effusion or joint instability. *Id.* As to her left lower extremity, Dr. Fouts found full range of motion of her left hip, knee, and ankle, with no joint instability or joint effusion. *Id.* He commented that her left calf is about 1½ inches smaller in diameter than the right calf, with depressed scars along the shin, which was consistent with her history of a childhood injury to her left leg. *Id.* at 359-360. He commented that the pulses in her

---

2. For reasons unknown to the Court, Lewis's blood pressure measurement was redacted from

left foot were diminished, but he could feel them, and that there were no signs of vascular insufficiency in the left foot or left leg. *Id.* at 360. He also noted that her gait was normal, she did not require a "balance device," and she could "walk for about a half mile." *Id.* at 359-360. Dr. Fouts concluded that she "would seem to have a good physical basis for a chronic pain syndrome of the left lower extremity," and that her blood pressure was "markedly elevated." *Id.* at 360. He also concluded that Lewis's "EKG does meet criteria for left ventricular hypertrophy which could be viewed as end[]organ damage for her high blood pressure." *Id.*

Lewis's attorney arranged for her to see Patricia M. Sandusky, Ph.D., for a psychological evaluation on May 14, 2014. *Id.* at 375-378. Dr. Sandusky observed that Lewis completed the twelfth grade in a special education program and noted that she had worked at least fifteen years in the poultry industry. *Id.* at 375. Dr. Sandusky commented that Lewis indicated that she could bathe, provide meals, engage in basic housekeeping, and care for her young child. *Id.* at 376. She commented that Lewis had three children, ages two, fifteen, and twenty-two at the time of the examination. *Id.* Dr. Sandusky commented that Lewis's affect was euthymic, she showed no indication or gave no report of significant depression, and she gave no indication of anxiety. *Id.*

Dr. Sandusky administered the Wechsler Adult Intelligence Scale, IV Edition, to Lewis. *Id.* at 376-377. Lewis obtained a full scale IQ of 72, which the psychologist found to be in the 3rd percentile and within the borderline range. *Id.* at 377. She commented that "there was significant variability in composite scores, ranging from a low of 71 in processing speed to a high of 83 in working memory." *Id.* Her diagnostic impression was "Borderline Intellectual Functioning" and "Impaired left leg (by report)." *Id.* The psychologist concluded, as follows:

---

the record. *Id.* at 359.

> Based on intellectual functioning, Ms. Lewis would have much difficulty functioning in a work environment that did not involve some type of repetitive motion or manual labor. If her physical condition is considered prohibitive of this, taken together, these conditions may reflect a disability prohibiting her from functioning in a work environment. Ms. Lewis is considered capable of handling funds in her own best interest if so assigned.

*Id.* at 378.

### III.  HEARING AND DECISION

In her July 11, 2014, decision, the ALJ evaluated Lewis's impairments using the familiar sequential evaluation process[3] and found that she has the severe impairments of obesity; left lower extremity osteoarthrosis; history of osteomyelitis and/or osteochondral defect; and essential hypertension. *Id.* at 14. The ALJ determined that Lewis's left ventricular hypertrophy,

---

3. In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

   (1)   whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

   (2)   whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

   (3)   whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

   (4)   whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

   (5)   whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

peripheral vascular disease, carpal tunnel syndrome, and borderline intellectual functioning were nonsevere. *Id.* at 14-15.

The ALJ concluded that Lewis does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Park 404, Subpart P, Appendix 1. *Id.* at 16. The ALJ determined that Lewis did not meet the requirements of Listing 1.02 (major dysfunction of a joint due to any cause) because her left lower extremity osteoarthritis and remote history of osteomyelitis do not prevent her from ambulating effectively or performing fine and gross movements effectively. *Id.* The ALJ considered the combined impact of her impairments, including obesity, and concluded that she did not meet or medically equal the criteria for any listed impairment. *Id.*

The ALJ determined that Lewis's borderline intellectual functioning did not meet or medically equal the criteria of Listing 12.05 (intellectual disability) because there was no evidence of adaptive functioning deficits prior to age 22. *Id.* The ALJ noted that although Lewis's high school transcript indicated that she completed high school with a special education certificate, she received passing grades in some regular classes, which was inconsistent with intellectual disability and illiteracy. *Id.* The ALJ pointed out that she could read the newspaper, do simple math, and engage in normal independent activities of daily living. *Id.* at 16-17. Finally, the ALJ pointed to her many years of substantial gainful activity, as evidenced by her starting work in 1991 at age 19 and her earnings record beginning in 1996 that was well above the level for substantial gainful activity, all of which was inconsistent with intellectual disability. *Id.* at 16.

After considering the record, the ALJ determined that Lewis has the residual functional

capacity to perform the full range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). *Id.* at 17. The ALJ found her complaints of the effects of pain and other symptoms to be partially credible based upon her conditions. *Id.* However, the ALJ determined that the objective evidence did not support the severity of limitations alleged by Lewis. *Id.* at 18. In particular, the ALJ relied on Dr. Fouts's consultative exam, which "reported physical examination findings mostly within normal limits, with normal gait, full range of motion, and normal strength in all extremities." *Id.* The ALJ also considered that gaps in treatment and non-compliance with medication detracted from Lewis's credibility. *Id.* The ALJ pointed to the fact that she had received unemployment in 2012, which "implie[d] that she was actively seeking employment and ready, willing and able to work if hired." *Id.* Taking into account her testimony, the record of treating and examining physicians, and non-examining physicians of Disability Determination Services, along with Lewis's subjective allegations and obesity, the ALJ found that Lewis could engage in the full range of sedentary work. *Id.* at 18-19. The ALJ determined that Lewis is unable to perform any past relevant work. *Id.* at 19. The ALJ concluded that Lewis was a "younger individual age 18-44" on the alleged onset date of April 15, 2011, because she was born on April 8, 1972, and was thirty-nine by the onset date. *Id.* at 20. The ALJ also determined that she had a limited education and is able to communicate in English, and that transferability of job skills was not an issue because her past relevant work was unskilled. *Id.*

Finally, the ALJ looked at Lewis's age, education, work experience and residual functional capacity in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, also known as the "grids," to conclude that Lewis is not disabled under

Rule 201.24. *Id.* at 20. The ALJ considered that the limitations found by state agency non-examining physicians, limitations consisting of limited ability to push/pull with the lower left extremity, postural limitations, and environmental limitations, and concluded that these had little or no effect on the occupational base for sedentary work. *Id.* The ALJ took judicial notice that the "vast majority of sedentary occupations are performed indoors, and, at most, require only occasional stooping, crouching and bending." *Id.* And the ALJ found that there was no "persuasive medical evidence" to support additional non-exertional limitations at the sedentary level of work. *Id.* at 21. The ALJ noted that even if Lewis were illiterate, and the ALJ found that she was not illiterate, Medical-Vocational Rule 201.23 would direct a finding of "not disabled." *Id.* Thus, the ALJ found that Lewis was not disabled from April 15, 2011, her date of onset, to the date of the decision, July 11, 2014. *Id.*

## IV. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing

the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

<u>V. DISCUSSION OF THE ALLEGED ERRORS<br> AND APPLICABLE LAW</u>

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence and should be reversed for two basic reasons, summarized as follows:

1. Did the ALJ apply the proper standard for evaluating whether an impairment is severe, as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), and, if not, did Plaintiff suffer prejudice?

2. Did the ALJ properly apply the medical-vocational guidelines of Appendix 2, Subpart P of Social Security Regulations No. 4?

[10] at 2-3.

<u>A.  Did the ALJ properly apply the *Stone* standard?</u>

Plaintiff argues that the ALJ used the wrong standard to evaluate severe impairments. That is, Lewis asserts that the ALJ did not use a definition that tracked the language set forth by the Fifth Circuit Court of Appeals in *Stone v. Heckler* to evaluate her impairments, and, in particular, her borderline intellectual functioning. Thus, Lewis argues that the case must be remanded to the Commissioner for application of the proper legal standard and for full consideration of all of her functional limitations, including her borderline intellectual

functioning, which, the Court observes, she did not assert was a disabling condition in her application for benefits.

The severity standard in this circuit was established in the case of *Stone*. In that case, the Fifth Circuit considered the regulation that defines a severe impairment as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and held that this definition was inconsistent with the Social Security Act. The court stated the correct severity standard as follows:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Stone,* 752 F.2d at 1101. Moreover, the court stated that in the future, it would assume that the ALJ had applied an incorrect standard "unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction [given by the *Stone* court] to 20 C.F.R. § 404.1520(c) is used." *Id.* at 1106. Lewis argues that remand is required because the ALJ failed to apply the *Stone* standard, observing that the ALJ defined a non-severe impairment as one which causes "no more than a minimal effect on an individual's ability to work, irrespective of her age, education or work history," while citing to *Stone*. *See* [7] at 14. With regard to her borderline intellectual functioning, the ALJ concluded that it "causes no more than minimal limitation in ability to perform the basic mental requirements of unskilled activity and is, therefore, nonsevere." *Id.* at 15. This language raises the issue of whether this "minimal effect" standard is equivalent to, or at least consistent with, the *Stone* standard.

˘10˘

The present confusion concerning the appropriate standard originates in post-*Stone* Social Security Administration rulings.  After *Stone*, the regulations regarding severity remained essentially the same.  However, the Administration responded to *Stone* and its standard by issuing a ruling attempting to clarify its policy for the determination of severity.  In the ruling, the Administration stated that an impairment would be considered non-severe if it was a slight abnormality having only a minimal effect on the ability to work.  SSR 85-28, 1985 WL 56856, at *3 (S.S.A. 1985).  A subsequent ruling used this same "minimal effect" language.  *See* SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. 1996)   Thus, as one court has observed, it appears that the Administration views this minimal limitation standard as consistent with the *Stone* standard.  *See Acosta v. Astrue*, 865 F.Supp.2d 767, 779-82 (W.D. Tex. 2012).  Not surprisingly, ALJs often cite to this regulation or quote its language.

Adding to the confusion in this circuit is the fact that the Fifth Circuit has occasionally used this language in its opinions.  *See*, *e.g.*, *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000) (directing that on remand, the ALJ is to determine whether claimant's mental impairments were merely "a slight abnormality of minimal effect on ability to work"); *Brunson v. Astrue*, 387 Fed. App'x 459, 461 (5th Cir. 2010) (unpublished decision) (per curiam) (stating that an impairment is not severe if it has no more than a minimal effect on ability to do basic work activities).  As a result, some district courts in this circuit have concluded that the minimal limitation standard is equivalent to the *Stone* standard.  *See, e.g.*, *Acosta v. Astrue*, 865 F.Supp. 2d 767, 782-83 (W.D. Tex. 2012).   Other courts, however, have reached the opposite conclusion.  *See, e.g., Padalecki v. Astrue*, 688 F.Supp.2d 576, 580-81 (W.D. Tex. 2010).

The language of *Stone*, however, is clear:  It allows for a minimal effect *on the individual* but makes *no* allowance for a minimal interference *with the ability to work*.  While the Fifth Circuit has occasionally referred to "minimal effect" on the ability to work, it has never specifically addressed the issue of whether this standard is consistent with *Stone.*  The undersigned believes that unless and until the Fifth Circuit holds that a severity analysis may properly allow for a minimal effect on an individual's ability to work, the better course is to apply *Stone* to require that a medically-determinable impairment having any effect on the ability to work be characterized as severe.  Under this interpretation of the correct standard, the ALJ's citation in the present case to the minimal effect standard was erroneous.

However, failure to cite to the correct standard does not necessarily mandate reversal.  *Stone* created only a presumption, and where the ALJ's written decision otherwise indicates that the ALJ applied the correct standard, or where the substantial rights of the plaintiff are not affected, the failure of the ALJ to cite to *Stone* or track its precise language does not require remand.  *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also LeBlanc v. Chater*, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996) (unpublished table decision) (per curiam).

In the portion of the decision in which the ALJ analyzed the severity of Plaintiff's borderline intellectual functioning, she specifically evaluated Lewis's allegations using the criteria of Listing 12.00(C) of the Listing of Impairments in 20 C.F.R., Ch. III, Part 404, Subpart P., Appendix 1.  [7] at 16.  Using the "paragraph B" criteria, the ALJ analyzed Lewis's activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  *Id.*  The ALJ concluded that because Lewis's borderline intellectual

functioning "causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation, it is nonsevere." *Id.* at 16.  In so doing, the ALJ cited record evidence supporting her finding of nonseverity.  The ALJ noted that Plaintiff did not allege a mental limitation in her request for disability, even though she had a history of completing high school in a special education curriculum, which included regular and vocational courses.  The ALJ observed that, by Lewis's own admission, she is independent with her personal care and runs a household, which includes children of various ages.  *See id.* at 194-201.  Lewis also helps take care of her elderly mother, helps her teenager with homework, and takes care of her own finances.  The ALJ observed that Lewis's reports indicate no limitations with regard to "memory, completing tasks, concentration, understanding and following instructions, or getting along with others." *Id.* at 18.  Moreover, the ALJ pointed out that Lewis had successfully performed unskilled work for over ten years. *Id.* at 16.

      The ALJ misquoted the *Stone* standard.  Nevertheless, the ALJ pointed to record evidence that supports the conclusion that Lewis's borderline intellectual functioning has such minimal effect on her as a person that it would not be expected to interfere with her ability to work.  As the ALJ correctly noted, record evidence shows that Lewis had, in fact, performed substantial gainful activity for many years, despite any borderline intellectual functioning.  Accordingly, substantial evidence supports the ALJ's decision on this issue, and Lewis's substantial rights were not violated by the ALJ misquoting the *Stone* standard.  Even if the ALJ erred in her application of *Stone*, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir.2007) (citation and quotation marks omitted). Such procedural errors

justify vacating "only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen,* 864 F.2d 333, 335 (5th Cir.1988); *see also Avery v. Colvin*, 605 Fed. Appx. 278, 283 (5th Cir. 2015). As shown by the ALJ's discussion of the evidence, substantial evidence exists supporting the ALJ's finding that her borderline intellectual functioning does not meet "paragraph B" criteria. Because Plaintiff has failed to show that she is so "functionally impaired by [her] mental impairment that [she] is precluded from engaging in substantial gainful activity, . . .any error by the ALJ in not following the procedures set out in *Stone* is harmless." *Taylor*, 706 F.3d at 603.

Plaintiff now asserts, however, that she has never maintained that she has an intellectual disability, but that, instead, her borderline intellectual functioning has resulted in deficits in intellectual functioning which, according to Dr. Sandusky, limit her to a work environment that involves "some type of repetitive motion or manual labor." Plaintiff argues that the ALJ did not consider Dr. Sandusky's recommendation, and that the ALJ's conclusion that she can perform the full range of sedentary work, with her functional limitations as determined by Dr. Sandusky, is "sheer speculation," and thus, she was prejudiced by the ALJ's conclusion on this issue.

To the contrary, the ALJ considered Dr. Sandusky's report "against the whole of the evidence" to find that it did not prevent her from performing the full range of sedentary work. [7] at 16. The ALJ accepted the diagnosis of borderline intellectual functioning, but rejected its implication that she could not perform the basic mental requirements of unskilled work. As the ALJ correctly noted, Plaintiff had performed the basic mental requirements of unskilled work for more than ten years. Accordingly, the ALJ essentially rejected the notion that Plaintiff's borderline intellectual functioning impacted her such that it would prevent her from performing

˘14˘

the full range of sedentary work. *Id.* at 15-16, 18-19.  Moreover, it appears to the undersigned that the psychologist's report intrudes into the realm of reaching a determination on Lewis's residual functional capacity.  Under the regulations and our case law, the determination of residual functional capacity is the sole responsibility of the ALJ. *See Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995).  To be sure, what Lewis "characterizes as the ALJ substituting [her] opinion [for that of the psychologist] is actually the ALJ properly interpreting the medical evidence to determine [her] capacity for work."  *Taylor*, 706 F.3d at 602–603.

In sum, the record contains substantial evidence to support the ALJ's finding that Plaintiff's borderline intellectual functioning does not qualify as a severe impairment, and that her borderline intellectual functioning has not historically interfered with her ability to work. Thus, the Court concludes that Plaintiff's substantial rights have not been violated, and any error by the ALJ in applying the *Stone* standard is harmless.  Accordingly, the ALJ's decision on this issue must remain undisturbed by this Court.

### B.  Did the ALJ properly apply the grids?

Plaintiff argues that the ALJ improperly applied medical-vocational Rule 201.24 when she found that Lewis is not disabled and has the capacity to perform the full range of sedentary work.  Rule 201.24 directs that a younger individual, age 18 to 44, with a limited or less education, who is at least literate and able to communicate in English, and whose previous work experience is unskilled or none, is not disabled.  Lewis argues that her nonexertional impairments significantly affect her residual functional capacity and, therefore, preclude use of the grids.

In this case, the Fifth Circuit case law squarely supports the ALJ's conclusion that Lewis

is not disabled, according to Rule 201.24 of the grids. The Fifth Circuit has found that "below-average intelligence alone does not constitute a non-exertional impairment" that requires the testimony by a vocational expert and precludes reliance on the grids. *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990). In another case, the Fifth Circuit found that a full scale IQ of 72 did not constitute "a non-exertional impairment rendering [claimant] entirely unable to perform light or sedentary work." *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).[4]

In the end, the "claimant must show that [she] is so functionally impaired by [her] mental impairment that [she] is precluded from engaging in substantial gainful activity." *Taylor*, 706 F.3d at 603. In this case, Lewis has failed to do so because the "record reflects that [claimant] was able to, and did, work for several years while suffering from ailments she now asserts are disabling." *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *see also Fraga v. Bowen,* 810 F.2d 1296, 1305 & n.11 (5th Cir.1987) (ability to work despite pre-existing condition supports ALJ's finding of not disabled). In sum, remand is not required since there is no evidence in the record that Plaintiff's claims of deficits in intellectual functioning are severe enough to prevent her from holding substantial gainful employment. *Taylor*, 706 F.3d at 603.

## VI. CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, the undersigned finds that the ALJ's decision that Lewis is not disabled is supported by substantial evidence. Therefore, the undersigned finds that the Defendant's Motion to Affirm Commissioner's Decision [13] should be granted, Plaintiff's Motion [9] should be denied, and that this matter should be dismissed with prejudice.

---

4. While Plaintiff places great emphasis on the report of the psychologist, Dr. Sandusky, the

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED, this the 20th day of March, 2017.

                                           /s/ F. Keith Ball
                                        UNITED STATES MAGISTRATE JUDGE

---

Court observes that the opinion is contrary to the Grids and is in conflict with *Selders*.